ILLINOIS CENTRAL RAILROAD COMPANY

v.

MICHAEL SHEEHAN.

*Railroads—Torts of Servants—Liability of Master—Assault upon Passenger—Intoxication—Instructions—Damages.*

1.   A railroad company is liable to a person who is assaulted by its employes while sitting in a passenger car, waiting for the train to start, although he has procured no ticket.

2.   The mere fact that a person is intoxicated does not authorize the employes of a railroad company to treat him with personal violence.

[Opinion filed May 25, 1888.]

APPEAL from the Circuit Court of Champaign County; the Hon. JAMES F. HUGHES, Judge, presiding.

Mr. J. S. WOLFE, for appellant.

Mr. FRANCIS M. WRIGHT, for appellee.

WALL, J. The appellee recovered a judgment against the appellant for the sum of $150. The form of action was trespass on the case. The declaration alleged that plaintiff lawfully entered the car of defendant for the purpose of being carried as a passenger from Champaign to Ludlow, and that the agents and servants of defendant ejected the plaintiff, and assaulted and otherwise ill-treated him. The plea was not guilty. It appears from the record that the car in question was attached to and a part of a freight train, and that it usually carried passengers.

This car was standing at the usual starting place and was warmed and lighted. Not long before the regular time of departure, plaintiff, intending to go to Ludlow, entered the car, and in doing so, pushed with some force against a brakemen, Myer, who was then in the act of changing his clothing. There were angry words between the two men, and there is some dispute as to the language used, but the plaintiff was suffered to come in and take a seat. Two other men, Smith and Carlson, with whom he was associated, and who were also going to Ludlow, had preceded him a few moments, and still another of the party, Rumly by name, came in a moment later. There were several other persons in the car who were also going as passengers. The brakeman, Myer, offended at the previous conduct of the plaintiff, went out and soon returned with the conductor and another brakeman. The conductor, on coming in, asked which were the men who had forced the door, and Myer pointed out the plaintiff and Smith and Carlson. There is conflict in proof as to the details of what was then said and done, the plaintiff and his friends insisting that they acted wholly on the defensive, and that the train men were the aggressors; but the result of it was that the three men so pointed out by Myer were sharply assaulted and beaten and put out of the car. They were afterward suffered to return and were carried to Ludlow.

By the special finding of the jury it appears the plaintiff was intoxicated when he entered the car and that the entry was made in a violent manner.

The degree of intoxication or violence is not found, and in looking to the evidence on these points it is not easy to determine just how much there was of either. The general verdict of guilty perhaps implies there was not much, and the evidence would justify such a conclusion.

The plaintiff was, no doubt, somewhat uncouth and violent in his manner, and violated propriety to some extent in making his entrance. But his offense of pushing the door against the brakeman was rather inadvertent than otherwise, and was a trivial thing which might well have been overlooked. However, it is probable that had the brakeman declined to admit him on account of his rudeness and his intoxication, there would have been warrant for the exclusion.

After the plaintiff was admitted and took his seat there was no further occasion to object to his presence, except that he was intoxicated. Here arises one of the two points chiefly relied on by appellant in this and in the trial court: that as it is an offense against the State to be intoxicated in any public place, and as plaintiff was intoxicated in this place, which was undoubtedly public, he was not lawfully there, and hence it was lawful to eject him for this cause. While it may be the train men might have properly arrested and taken him before a magistrate on a charge of drunkenness (by virtue of the police authority conferred by statute on the employes of trains and steamboats), yet they were not authorized to inflict personal violence upon him because of what he had done, or of his then condition of intoxication.

It may be also, that if he was intoxicated they might have ejected him, if, after being requested, he had refused to go, using no unnecessary force, and this, even though his intoxication was not such as to render him disagreeable or dangerous at the time, if there was reason to believe that if allowed to remain he would become unfit to be treated as a passenger.

But the jury no doubt believed from the evidence that the action of the conductor and brakemen was inspired, not so much by the then condition of the plaintiff as by his manner of entering the car; in other words, that they intended to correct him for his past unseemly conduct; and as might have

I. C. R. R. Co. v. Sheehan.

been expected on this theory of the case, it appears that after the punishment had been imposed the plaintiff and his friends were allowed to re-enter the car and were carried, on payment of the regular fare, as far as they wanted to go without objection on account of intoxication.

The other point urged by appellant is that plaintiff did not occupy such a relation to the defendant as to make it its duty to protect him against the misconduct of the servants of defendant. An argument not wanting in plausibility and citing many authorities is presented in support of this view. We think there is no analogy between the various cases referred to and the one at bar. In this case, the defendant had furnished a conveyance which was prepared for public use and to which the public were invited. It was not necessary that a ticket should be procured in advance or that any other arrangement should be made. It was customary for persons wishing to travel that way to enter and wait until the train started, and when called on, to pay fare or produce a ticket; and while one intending to so travel might change his mind and leave the car before it started without incurring any liability, yet the defendant owed to all persons entering the car for that purpose a certain measure of duty, for a breach of which an action would lie. It was the duty of defendant to protect the plaintiff while so in the car against the unlawful assaults of the train men, and for such assault the defendant would be liable. This duty is as clear as it would be if one intending to take a train had entered a waiting room to remain until the arrival of the train. There could be no doubt in such a case the company would be answerable for the conduct of its employe in charge of the room. Appellant's argument rests to some extent upon the proposition that the plaintiff was not a passenger as claimed in the declaration. It is not alleged that he was a passenger but that he had entered the car to become a passenger, and so is the proof. True, he had purchased no ticket and no express contract of that sort had been made, but he had gone into a place prepared by defendant for public accommodation to be carried to the point desired for the fare to be paid. It would not be admissible that the

servants of defendant in charge of the car could maltreat him without liability on the part of defendant simply because no express contract of carriage had been entered into. There was, however, a conditional offer to carry implied by the circumstances which plaintiff accepted by going to the car, and thus an implied conditional contract arose between the parties.

The action of the court in giving and refusing instructions is pressed as ground of reversal. The points made in this regard are in substance those already noticed. After carefully examining the various instructions we are satisfied with the ruling of the court. Those given embody what we deem correct principles as applicable to the facts, and those refused so far as not embraced in those given are unsound or properly refused because there is no evidence on which to predicate them. It is not necessary to discuss all these in detail and we need only say that, in our opinion, the jury were well advised as to the law of the case.

The evidence, though conflicting in some particulars, is sufficient to support the verdict, and we find no good reason to disturb the judgment, which is therefore affirmed.

*Judgment affirmed.*

### I. C. R. R. Co. v. Jas. Smith.

WALL, J. This case is in its facts like the case of I. C. R. R. Co. v. Sheehan, except that there was no finding that plaintiff entered the car in a violent manner, and that the verdict is for $100. The judgment will be affirmed.

*Judgment affirmed.*

### I. C. R. R. Co. v. Oscar Carlson.

WALL, J. This case is like the case of I. C. R. R. Co. v. Smith, in its facts and in the findings of the jury, though the verdict is for a different sum, $25. The judgment will be affirmed.

*Judgment affirmed.*